CIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COOK COUNTY REPUBLICAN PARTY,<br><br>    Plaintiff,<br><br>v.<br><br>J.B. PRITZKER, in his official capacity as Governor of the State of Illinois; CHARLES W. SCHOLZ, IAN K. LINNABARY, WILLIAM J. CADIGAN, LAURA K. DONAHUE, WILLIAM R. HAINE, WILLIAM M. MCGUFFAGE, KATHERINE S. O'BRIEN, and CASANDRA B. WATSON, in their official capacities as Board Members of the Illinois State Board of Elections; KAREN A. YARBROUGH, in her official capacity as Cook County Clerk; and MARISEL A. HERNANDEZ, WILLIAM J. KRESSE, and JONATHAN T. SWAIN, in their official capacities as Commissioners of the Chicago Board of Election Commissioners,<br><br>    Defendants. | No. _____<br><br>**Complaint** |

## INTRODUCTION

1. Voting is a fundamental, constitutional right that is central to our American democracy. *See Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966).

2. Governor J.B. Pritzker violated this right by signing into law a partisan voting scheme that is designed to harvest Democratic ballots, dilute

1

Republican ballots, and, if the election still doesn't turn out the way he wants it, to generate enough Democratic ballots after election day to sway the result. *See* Public Act 101-0642 a/k/a SB 1863, 101st General Assembly ("SB 1863"). The remaining Defendants are charged with carrying out this partisan scheme.

3. This civil action for declaratory and injunctive relief is filed to stop SB 1863 from going into effect. The claims arise under the First and 14th Amendments of the U.S. Constitution; 42 U.S.C. Section 1983; 28 U.S.C. § 2201(a); and Article III, Section 4 of the Illinois Constitution.

## PARTIES

4. Plaintiff, Cook County Republican Party (the "Republican Party"), is a registered political committee that is the vehicle for Republicans to advance their candidates and agenda in Cook County. The Republican Party includes among its ranks federal, state, and local elected officials and candidates, supported by thousands of grassroots activists, donors, and voters.

5. Defendant J.B. Pritzker ("Pritzker") is the governor of the State of Illinois and the chief executive responsible for implementing SB 1863, including its state holiday. He lives and works in Cook County, Illinois. His address for service of process is Office of the Governor, 100 W. Randolph St., 16-100, Chicago IL 60601.

6. Defendants Charles W. Scholz, Ian K. Linnabary, William J. Cadigan, Laura K. Donahue, William R. Haine, William M. McGuffage, Katherine S. O'Brien, and Casandra B. Watson are Board Members of the Illinois State Board of Elections

(the "Board"), the board responsible for implementing SB 1863. The Board maintains one of its two primary offices at 100 W. Randolph, Suite 14-100, Chicago, IL 60601, where these Defendants may be served in their official capacities.

7. Defendant Karen A. Yarbrough is Cook County Clerk, the executive charged with implementing SB 1863 in suburban Cook County. She lives and works in Cook County, Illinois and may be served at her place of business, located at 69 W. Washington Street, Suite 500, Chicago, IL 60602.

8. Defendants Marisel A. Hernandez, William J. Kresse, and Jonathan T. Swain are Commissioners of the Chicago Board of Election Commissioners, charged with implementing SB 1863 in Chicago. They live and work in Cook County, Illinois and may be served at their place of business, located at 69 W. Washington Suite, Suite 600, Chicago, IL 60602.

## JURISDICTION AND VENUE

9. This case raises claims under the First and 14th Amendments of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 2201(a). The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

10. Venue is appropriate under 28 U.S.C. § 1391(b)(1) because Defendants Pritzker, Linnabary, Cadigan, McGuffage, O'Brien, Watson, Yarbrough, Hernandez, Kresse, and Swain reside in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

11. The Democrats in the Illinois General Assembly snuck through SB 1863 in five days, from May 18-22, 2020, by hijacking a bill about the Freedom of Information Act, amending it to advance their partisan election agenda, and rushing it to passage before the people of Illinois could weigh in with their opposition. *See* Bill Status of SB 1863.[1]

12. SB 1863 was introduced in the Senate on February 15, 2019, as an amendment to the Freedom of Information Act, passed the Senate on April 4, 2019, underwent First Reading in the House on April 9, 2019, underwent Second Reading in the House on May 22, 2019, and languished for a year. *Id.*

13. SB 1863 was suddenly rewritten in 2020 by House Floor Amendment 5, which was filed on May 19, 2020, and House Floor Amendment 6, which was filed on May 21, 2020. The bill passed the House later the same day, with only one Republican voting in favor. The Senate passed it the next day, with no Republicans voting in favor. *Id.*; *see also* Dan Petrella, "5 Million Illinois Voters to Receive Mail-in Ballot Applications after Gov. J.B. Pritzker Signs Temporary Vote-by-mail Expansion," Chicago Tribune, June 16, 2020.[2]

---

[1] Available at https://www.ilga.gov/legislation/billstatus.asp?DocNum=1863&GAID=15&GA=101&DocTypeID=SB&LegID=119533&SessionID=108&SpecSess= (retrieved June 22, 2020).

[2] Available at https://www.chicagotribune.com/coronavirus/ct-coronavirus-vote-by-mail-20200616-bi5qwfdq7bgjhdb4rzu7ygebme-story.html (retrieved June 16, 2020).

14. On June 16, 2020, Pritzker signed SB 1863 into law as Public Act 101-0642. *See* Bill Status of SB 1863.

15. Pritzker claimed the law would "allow more people" to vote by mail and would address fears of voting in person due to COVID-19. *See* J.B. Pritzker, "Gov. Pritzker Signs Legislation to Expand Vote by Mail, Promote Safe Participation in the 2020 Election" Illinois.gov, June 16, 2020.[3]

16. But under prior law, every Illinois voter already had the right to vote by mail. 10 ILCS 5/19-1.

17. Thus, Pritzker's statement is pretextual and belies his real intent: to implement a partisan voting scheme that will open the door to voter fraud.

18. SB 1863 creates a partisan voting scheme that is designed to directly disenfranchise voters disfavored by Pritzker, to dilute the votes of those disfavored by Pritzker, and to violate the secrecy of voting in Illinois.

19. Many aspects of SB 1863 work together to create the scheme by which Pritzker plans to disenfranchise the Republican Party.

20. The scheme begins by putting as many ballots into play for the election as possible by mailing an application for a mail-in ballot to every voter who voted in the 2018 general election, the 2019 consolidated election, or the 2020 general primary election. 10 ILCS 5/2B-15(b). That amounts to roughly 5 million mail-in

---

[3] Available at https://www2.illinois.gov/Pages/news-item.aspx?ReleaseID=21690 (retrieved Aug. 6, 2020).

ballot applications, which were supposed to have been sent by August 1. *Id*.; *see also* Petrella, "5 Million Illinois Voters."

21. A high likelihood exists that applications were sent to people who may no longer be eligible to vote in Illinois. For example, the *Wall Street Journal* discovered that at least one former voter in Washington state recently received his ballot in the mail at his new address in Texas. *See* Scott Hogenson, "An Invitation in the Mail for Election Fraud," Wall Street Journal, Aug. 2, 2020.[4] And that was in a state that implemented voting by mail years ago.

22. The states that use mail-in voting took years to perfect their process as they enlarged eligibility gradually before launching statewide. Implementing vote-by-mail is a learning process. State officials must identify qualified vendors for printing ballots, develop tracking systems so voters can be assured their ballots will arrive on time, and develop methods of reviewing signatures that reduce the number of rejected ballots. Doing so takes "decades, not months." Barry Burden et al., "More Voting by Mail Would Make the 2020 Election Safer for Our Health. But it Comes with Risks of Its Own," Washington Post, Apr. 6, 2020.[5]

23. Attempting to implement a process overnight in a state as large as Illinois will inevitably lead to thousands of lost and delayed ballot applications and ballots. A recent election in another large state that rushed into voting by mail

---

[4] Available at https://www.wsj.com/articles/an-invitation-in-the-mail-for-election-fraud-11596385418?mod=hp_opin_pos_3 (retrieved Aug. 3, 2020).
[5] Available at https://www.washingtonpost.com/politics/2020/04/06/more-voting-by-mail-would-make-2020-election-safer-our-health-it-comes-with-risks-its-own/ (retrieved Aug. 5, 2020).

shows the perils that lie ahead for Illinois. Over 80,000 New York City Democratic presidential primary ballots were not counted in the June 23 election because they arrived late, lacked a postmark, failed to include a signature, or contained other defects. This number meant that a staggering 21% of the votes cast were not counted. *See* Carl Campanile et al., "Over 80,000 Mail-in Ballots Disqualified in NYC Primary Mess," New York Post, Aug. 5, 2020.[6]

24. The hurried nature of implementation is not the only hurdle Illinois faces. Illinois state government is one of the most inept in the Union, and the public has no reason to expect a vote-by-mail system to work any more smoothly than a variety of projects Illinois has stumbled through in recent years.

25. For example, Illinois has suffered more than 120,000 cases of unemployment fraud during the ongoing COVID-19 pandemic. *See* Erin Heffernan, "More than 120,000 Cases of Unemployment Fraud Found in Illinois since March, Pritzker Says," St. Louis Post-Dispatch, Aug. 5, 2020.[7]

26. The government response has been underwhelming. ABC7 reported that nine of the ten fraud victims they spoke with were unable to reach the Illinois Department of Employment Security. *See* Samatha Chatman, "Illinois

---

[6] Available at https://nypost.com/2020/08/05/84000-mail-in-ballots-disqualified-in-nyc-primary-election/ (retrieved Aug. 5, 2020).
[7] Available at https://www.stltoday.com/news/local/illinois/more-than-120-000-cases-of-unemployment-fraud-found-in-illinois-since-march-pritzker-says/article_fdfd4ff8-e86e-571c-a101-f70bdf3d5540.html (retrieved Aug. 5, 2020).

Unemployment IDES Debit Card Fraud a Growing Concern for Police," ABC7 Eyewitness News, July 16, 2020.[8]

27. Illinois has even had ongoing difficulties with its most recent attempt to expand voting rights. In 2017, the Illinois legislature unanimously passed automatic voter registration. The following year, the *State Journal-Register* reported that Secretary of State Jesse "White's office said the [automatic registration] procedure won't be ready to go until next year when the state is finally expected to comply with the REAL ID law." *See* Doug Finke, "Nearly 187,000 Use Automatic Voter Registration," State Journal-Register, Dec. 18, 2018.[9]

28. By early 2020, it emerged that 4,700 ineligible 16-year-olds had had their information sent to the State Board of Elections through the automatic voter registration program. *See* Dan Petrella, "Illinois Election Officials Reveal More Issues with Automatic Voter Registration," Chicago Tribune, Jan. 30, 2020.[10] In addition, some U.S. citizens who had opted out of automatic voter registration, nevertheless, had their information forwarded to the State Board of Elections. *Id.*

29. Most alarmingly, 545 possible non-citizens were registered to vote, and at least 15 of them voted illegally in 2018 or 2019. *Id.* These problems caused several civil rights groups to sue the Secretary of State in this Court over his

---

[8] Available at https://abc7chicago.com/illinois-unemployment-ides-fraud-il/6321133/ (retrieved Aug. 5, 2020).
[9] Available at https://www.sj-r.com/news/20181218/nearly-187000-use-automatic-voter-registration (retrieved Aug. 5, 2020).
[10] Available at https://www.chicagotribune.com/politics/ct-illinois-automatic-voter-registration-16-year-olds-20200130-wqooin23vff23cqrldgp2rrcbe-story.html (retrieved Aug. 5, 2020).

missteps in implementing the law over the last three years. *See Asian Americans Advancing Justice-Chicago, et al. v. Jesse White,* No. 1:20-cv-1478 (N.D. Ill.).

30. The sum of this incompetence from the leaders of state government shows that Illinois is woefully unprepared to implement a vote-by-mail system this year. Especially in light of the gross mismanagement of public finances, Illinois citizens have every reason to believe that the people tasked with protecting their right to vote are not up to the task of fulfilling their current obligations, to say nothing of new ones.

31. Among many of the practical deficiencies of the Illinois vote-by-mail scheme is that it does not comport with recommendations issued by the United States Postal Service. *See* "Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area," Office of Inspector General, United States Postal Service, July 7, 2020.[11]

32. According to the USPS Inspector General, "ballots requested less than seven days before an election are at a high risk of not being delivered, completed by voters, and returned to the election offices in time." *Id.* at 7.

33. But Illinois allows voters to request an absentee ballot as late as October 29, 2020 – three business days before the election.

---

[11] Available at https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf (retrieved Aug. 5, 2020).

34. Indeed, the Inspector General's report indicates that the Illinois deadline "put[s] ballots at high risk of not being delivered to voters before an election." *Id.* at 6.

35. Also, the Inspector General's report states that "election offices should be educated on the benefits [that Intelligent Mail Barcodes] provide." *Id.* at 7. Intelligent Mail Barcodes (IMbs) allow mailers and the Postal Service to track each ballot and would enable the Postal Service and election authorities to track ballots and identify delays. *Id.* at 4.

36. SB 1863 makes no provision that mail ballots be tracked with IMbs or any other tracking device; therefore, thousands of voters will be disenfranchised when their ballots are lost in the mail.

37. For the ballots that are received by election authorities, the system for counting so many mail-in ballots will be overtaxed, leading to lax procedures for ensuring the secrecy of the ballot.

38. In addition to incompetence, SB 1863 will breed corruption. While other states may use mail-in voting, implementing a system overnight "in a state as notorious for election fraud as Illinois is" will open the door to criminal activity. *Nader v. Keith*, 385 F.3d 729, 733 (7th Cir. 2004). As the Seventh Circuit Court of Appeals already recognized, "Oregon, for example, has switched to a system of all-mail voting. O.R.S. § 254.465. But what works in the state of Oregon doesn't necessarily work in Illinois, especially in light of the colorful history of vote fraud we've seen." *Id.* at 734. (internal quotations omitted).

39. The provision of the voting scheme that is most important to committing voter fraud is ballot harvesting. SB 1863 allows for ballot harvesting, in which a paid, partisan operative may collect Democratic mail-in ballot applications and ballots to ensure that they are turned in and counted and may collect Republican mail-in ballot applications and ballots to ensure that they are not turned in and counted.

40. Ballot harvesting of mail-in ballots is the biggest concern for voter fraud, according to the bipartisan Report of the Commission on Federal Election Reform, chaired by former Democratic President Jimmy Carter and former Republican Secretary of State James Baker. "As the Carter-Baker Report observed, the 'electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud . . . .'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008). The report concludes, "Absentee ballots remain the largest source of potential voter fraud. . . . Vote buying schemes are far more difficult to detect when citizens vote by mail." "Building Confidence in U.S. Elections" at 46.[12]

41. Just last election cycle, a Republican Congressional victory was overturned and a new election ordered in North Carolina due to voter fraud via ballot harvesting. *See* "State Board unanimously orders new election in 9th Congressional District," North Carolina State Board of Elections.[13] In that race, a

---

[12] Available at https://web.archive.org/web/20070609115256/http://www.american.edu/ia/cfer/report/full_report.pdf (retrieved June 23, 2020).
[13] Available at https://www.ncsbe.gov/Press-Releases?udt_2226_param_detail=229 (retrieved June 23, 2020).

11

paid political operative collected mail-in ballots from voters under the auspices of returning them to the election commission. Ballots marked for the Republican candidate were returned and ballots marked for the Democratic candidate were either altered or never turned in at all. *See* Doug Bock Clark, "The Tearful Drama of North Carolina's Election-Fraud Hearings," the New Yorker, Feb. 24, 2019.[14]

42. This Court need look no further than next door in East Chicago, Indiana, to find another race overturned for voter fraud in absentee ballots during the Democratic mayoral primary in 2003. *See* RuthAnn Robinson, "More vote fraud charges," The Times of Northwest Indiana, July 30, 2005.[15]

43. The provision of SB 1863 allowing for ballot harvesting reads, "Election authorities shall accept any vote by mail ballot returned, including ballots returned with insufficient or no postage . . ." 10 ILCS 5/2B-20(e). It does not require the ballot to be returned by the voter or his or her close family member or friend, as do the laws in many other states. *See* "Voting Outside the Polling Place," Table 10, National Conference of State Legislatures.[16]

---

[14] Available at https://www.newyorker.com/news/dispatch/the-tearful-drama-of-north-carolinas-election-fraud-hearings (retrieved June 23, 2020).
[15] Available at https://www.nwitimes.com/news/local/more-vote-fraud-charges/article_e05687f5-aa45-5834-b7a9-c89c7620cfee.html (retrieved June 23, 2020).
[16] Available at https://www.ncsl.org/research/elections-and-campaigns/vopp-table-10-who-can-collect-and-return-an-absentee-ballot-other-than-the-voter.aspx (retrieved June 23, 2020).

44. To further ease the harvesting of votes in Illinois, the names and addresses of all voters who request a ballot by mail must be given to any political committee and candidate which requests them. 10 ILCS 5/2B-55(d).

45. For those who fail to request a ballot by mail, they will be nagged to do so by political party operatives.

46. Cook County Clerk Karen A. Yarbrough foreshadowed the plans of her political party to do so when she sent the following message from her official county clerk Twitter account: "This election you may receive mail ballot applications from third parties, candidates and political parties, which they are allowed to send you." *See* Karen A. Yarbrough, Twitter, July 31, 2020.[17]

47. Government officials like Yarbrough and Secretary of State Jesse White will blur the lines between their political and official positions in an effort to confuse voters about official government communications, as they have in past elections, and their efforts will be much more successful with so many voters-by-mail subject to their solicitations.

48. The mail-in ballots may be returned as late as "election day up until the close of the polls." *Id*.

49. Pritzker needs workers to harvest the ballots, so SB 1863 creates an army of workers to harvest the ballots on election day by giving all government employees the day off from work. That includes teachers and students, as schools

---

[17] Available at https://twitter.com/cookcountyclerk/status/1289302010853031938 (retrieved August 3, 2020)

are required to close. 10 ILCS 5/2B-10.

50. Public sector union members at the largest government employer in the state, Chicago Public Schools, maintain a voter profile of 60.69% Democratic and only 4.25% Republican, according to an analysis of 2018 voter profiles. Allowing overwhelmingly Democratic public sector employees the day off to collect ballots, while private sector employees will be at work, will dilute the votes of the Republican Party.

51. This scheme has been used before, and Pritzker intends to replicate the corruption. For example, the "U.S. Postal Service engaged in widespread violation of federal law by pressuring managers to approve letter carriers' taking time off [in 2016] to campaign for Hillary Clinton and other union-backed Democrats." Lisa Rein, "Postal Service Broke Law in Pushing Time Off for Workers to Campaign for Clinton, Investigation Finds," Washington Post, July 19, 2017.[18]

52. The way to protect against voter fraud through ballot harvesting is by having an election judge disqualify the applications and ballots whose signatures do not match those on file with the election commission, so SB 1863 does away with this provision. Under prior law, ballots could be disqualified by one nonpartisan election judge, and the decision could be upheld by a panel of three judges. *See* 2019 10 ILCS 5/19-8(g-5).

---

[18] Available at https://www.washingtonpost.com/politics/postal-service-broke-law-in-pushing-time-off-for-workers-to-campaign-for-clinton-investigation-finds/2017/07/19/3292741c-6ca0-11e7-b9e2-2056e768a7e5_story.html (retrieved Aug. 5, 2020).

53. SB 1863 requires that election judges be partisan, creates a presumption that a signature on a mail-in ballot is authentic, and requires all three partisan election judges to disqualify a mail-in ballot for an invalid signature. 2020 10 ILCS 5/2B-20. In other words, one Democratic election judge can veto the rejection of every single ballot in the locality, even if the other two judges rule that the ballot is fraudulent. *Id*.

54. SB 1863 does not even require that the election judge with veto power over thousands of fraudulent ballots be an adult or eligible to vote at all. Instead, it allows a 16-year-old, whose school is conveniently closed, to serve as the partisan election judge to determine voter validity. 10 ILCS 5/2B-40(a)(1). In case Pritzker is unable to notify enough students to serve in this partisan role, SB 1863 requires that all secondary schools do so. *Id*.

55. In addition to the mail-in ballot scheme, SB 1863 also disenfranchises Republican voters by changing the rules of the game for early voting and provisional ballots.

56. The change in the administration of provisional ballots is the failsafe measure to generate enough votes to win the election, even if all other measures do not produce the desired partisan result.

57. Under the prior law, a voter casting a provisional ballot had seven days in which to cure the ballot by showing the proper identification to the local election authority. 2019 ILCS 5/18A-15.

58. SB 1863 leaves the outcome of the election uncertain for fourteen days after election day to allow a voter casting a provisional ballot to cure the ballot by showing the proper identification to the local election authority. 10 ILCS 5/2B-35(e).

59. Under this scenario, the army of workers with the day off could show up to the polls on election day claiming to be any one of millions of voters who did not request a mail-in ballot and could cast a provisional ballot with no identification at all and a fraudulent signature. Then, if more votes are needed after election day, these same partisan workers will now have 14 days to go find the actual voters they impersonated and convince them to present their proper identification to the election authority, so the fraudulent vote will be counted.

60. Thus, the scheme is complete from fraudulent mail-in ballot applications to mail-in ballots, to early voting, to election day, and beyond.

## COUNT I

**SB 1863 violates the fundamental right to vote in the First and 14th Amendments and "the integrity of the election process" in Ill. Const. Art. III, Sec. 4 by vote-dilution disenfranchisement.**

61. The allegations contained in all preceding paragraphs are incorporated herein by reference.

62. The right to vote is protected by the First and 14th Amendments to the U.S. Constitution and is fundamental, *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966).

63. The right to have one's vote counted is well-established: "Undeniably the Constitution of the United States protects the right of all qualified citizens to

vote, in state as well as in federal elections . . . ." *Reynolds v. Sims,* 377 U.S. 533, 554 (1964).

64. The Illinois Constitution requires election integrity even greater than that found in the U.S. Constitution: "The General Assembly by law shall . . . insure . . . the integrity of the election process . . . ." Ill. Const. Art. III, Sec. 4.

65. The provision of SB 1863 allowing ballot harvesting will lead to fraudulent votes being counted, thus diluting lawful votes for candidates of the Republican Party.

66. The provision of SB 1863 giving a paid holiday to government workers will lead to fraudulent votes being counted, thus diluting lawful votes for candidates of the Republican Party.

67. The provision of SB 1863 presuming that mail-in ballot signatures are valid and giving one partisan election judge veto power over the other two judges in rejecting the signature will lead to fraudulent votes being counted, thus diluting lawful votes for candidates of the Republican Party.

68. The provision of SB 1863 allowing for underage election judges will lead to fraudulent votes being counted, thus diluting lawful votes for candidates of the Republican Party.

69. The provision of SB 1863 allowing 14 days to cure a defective provisional ballot will lead to fraudulent votes being counted, thus diluting lawful votes for candidates of the Republican Party.

70. The vote-dilution disenfranchisement resulting from the voting scheme of SB 1863 violates the First and 14th Amendments to the U.S. Constitution and Ill. Const. Art. III, Sec. 4.

## COUNT II

### SB 1863 violates the fundamental right to vote in the First and 14th Amendments and "the integrity of the election process" in Ill. Const. Art. III, Sec. 4 by direct disenfranchisement.

71. The allegations contained in all preceding paragraphs are incorporated herein by reference.

72. The provisions of SB 1863 requiring 5 million mail-in ballot applications to be sent, failing to include a tracking system for ballots, and allowing them to be requested three business days before the election will directly disenfranchise many voters. The sudden surge in absentee ballots will cause many ballot applications and ballots to never arrive or arrive too late, and it will cause completed ballot applications and ballots to get lost or delayed in the return process, thus directly disenfranchising voters for candidates of the Republican Party.

73. The provision of SB 1863 allowing ballot harvesting will lead to ballots being collected by paid, partisan, political operatives and never turned into the election authority, thus directly disenfranchising voters for candidates of the Republican Party.

74. The provision of SB 1863 giving a paid holiday to government workers will lead to ballots being collected by paid, partisan, political operatives and never turned into the election authority, thus directly disenfranchising voters for

candidates of the Republican Party.

75. The direct disenfranchisement resulting from the voting scheme of SB 1863 violates the First and 14th Amendments to the U.S. Constitution and Ill. Const. Art. III, Sec. 4.

## COUNT III

**SB 1863 violates the "secrecy of voting" in Ill. Const. Art. III, Sec. 4.**

76. The allegations contained in all preceding paragraphs are incorporated herein by reference.

77. The Illinois Constitution requires voter secrecy greater than that in the U.S. Constitution: "The General Assembly by law shall . . . insure secrecy of voting . . . ." Ill. Const. Art. III, Sec. 4.

78. The provision of SB 1863 giving to political committees and candidates the names and addresses of those who request a ballot by mail violates the secrecy of those voters wishing to vote by mail.

79. The provision of SB 1863 expanding the number of mail-in ballots by millions will overrun the process of counting mail-in ballots, thus revealing secret ballots cast for and against candidates of the Republican Party.

80. The revelation of voter information resulting from the voting scheme of SB 1863 violates Ill. Const. Art. III, Sec. 4.

## PRAYER FOR RELIEF

Plaintiff, Cook County Republican Party, respectfully requests this Court:

    a.    Declare that SB 1863 violates the fundamental right to vote in the First and 14th Amendments to the U.S. Constitution and "the integrity of the election process" in Ill. Const. Art. III, Sec. 4 by vote-dilution disenfranchisement.

    b.    Declare that SB 1863 violates the fundamental right to vote in the First and 14th Amendments to the U.S. Constitution and "the integrity of the election process" in Ill. Const. Art. III, Sec. 4 by direct disenfranchisement.

    c.    Declare that SB 1863 violates the "secrecy of voting" in Ill. Const. Art. III, Sec. 4.

    d.    Enjoin Defendants from enforcing SB 1863;

    e.    Award Plaintiff its costs and attorneys' fees under 42 U.S.C. § 1988; and

    f.    Award any further relief to which Plaintiff may be entitled.

Dated: August 10, 2020        Respectfully Submitted,

**COOK COUNTY REPUBLICAN PARTY**

By: /s/ Brian K. Kelsey
Brian K. Kelsey
James J. McQuaid
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Telephone (312) 263-7668
Facsimile (312) 263-7702
bkelsey@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org

*Attorneys for Plaintiff*

20