# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| COOK COUNTY REPUBLICAN PARTY,<br><br>    Plaintiff,<br><br>v.<br><br>J.B. PRITZKER, in his official capacity as Governor of the State of Illinois; CHARLES W. SCHOLZ, IAN K. LINNABARY, WILLIAM J. CADIGAN, LAURA K. DONAHUE, WILLIAM R. HAINE, WILLIAM M. MCGUFFAGE, KATHERINE S. O'BRIEN, and CASANDRA B. WATSON, in their official capacities as Board Members of the Illinois State Board of Elections; KAREN A. YARBROUGH, in her official capacity as Cook County Clerk; and MARISEL A. HERNANDEZ, WILLIAM J. KRESSE, and JONATHAN T. SWAIN, in their official capacities as Commissioners of the Chicago Board of Election Commissioners,<br><br>    Defendants. | No. 1:20-cv-04676<br><br>Hon. Robert M. Dow, Jr.<br><br>**Memorandum of Law in Support of Motion for Preliminary Injunction** |

**INTRODUCTION**

In five short days in May, the Democrats who control the Illinois General Assembly used the cover of the ongoing coronavirus pandemic to sneak through a bill designed to entrench their political power at the expense of the voters of Illinois. *See* Public Act 101-0642 a/k/a SB 1863, 101st General Assembly ("SB 1863"), attached as Exhibit A. SB 1863 dilutes lawful votes, directly disenfranchises voters, and violates the secrecy of voting in Illinois.

Plaintiff, Cook County Republican Party, seeks a free and fair election in November: to have all the votes for its candidates counted and to have thrown out any and all fraudulent votes.

Defendant J.B. Pritzker, on the other hand, is actively working to undermine the fundamental right of his opponents to express a voice in Illinois politics. The voting scheme he signed into law that is being enforced by the Defendants will cause Plaintiff and all those who wish to exercise their right to vote in Illinois irreparable injury that no post-election relief could fully remedy. For that reason, and with the election looming, Plaintiff moves this Court for a Preliminary Injunction that will protect the fundamental right to vote in the U.S. Constitution and the integrity of the election process and secrecy of voting in the Illinois Constitution.

**FACTS**

Plaintiff, Cook County Republican Party, is a registered political committee that coordinates and advances the Republican agenda in Cook County, Illinois.

Senate Bill 1863 was pushed through the legislature in five days, hijacking an unrelated piece of legislation to advance the partisan agenda of the Democrats who control the General Assembly and receiving only one Republican vote. *See* Bill Status of SB 1863[1]; *see also* Dan

---

[1] Available at
http://www.ilga.gov/legislation/billstatus.asp?DocNum=1863&GAID=15&GA=101&DocTypeID=SB&LegID=119533&SessionID=108&SpecSess=
(retrieved June 22, 2020).

Petrella, "5 million Illinois voters to receive mail-in ballot applications after Gov. J.B. Pritzker signs temporary vote-by-mail expansion," Chicago Tribune, June 16, 2020.[2] On June 16, 2020, Defendant J.B. Pritzker signed SB 1863 into law, claiming it would "allow more people" to vote by mail and reduce the spread of COVID-19. *See* J.B. Pritzker, "Gov. Pritzker Signs Legislation to Expand Vote by Mail, Promote Safe Participation in the 2020 Election" Illinois.gov, June 16, 2020.[3] This statement was pretextual because Illinois voters could already request an absentee ballot under prior law with no reason required. 10 ILCS 5/19-1. The true intent of SB 1863 was to create a partisan voting scheme that is designed to dilute the votes of those disfavored by Pritzker, to directly disenfranchise such voters, and to violate the secrecy of voting in Illinois.

Under SB 1863, by August 1, Defendants were to mail an application for a mail-in ballot to everyone who voted in any of the past three elections — the 2018 general election, the 2019 consolidated election, or the 2020 primary election. 10 ILCS 5/2B-15(b). This equates to approximately 5 million mail-in ballot applications that were to be distributed. Petrella, "5 Million Illinois Voters." At this moment, reports are coming in of duplicate ballot applications having been received or none at all. Given the track record of incompetence that Illinois government, and Cook County in particular, have displayed in administering fiscal matters, unemployment insurance, and automatic voter registration, it is no surprise that such ineptitude is already occurring.

SB 1863 fails to require tracking systems recommended by the U.S. Postal Service, and it allows ballots to be requested up to three business days prior to election day, which is two days

---

[2] Available at https://www.chicagotribune.com/coronavirus/ct-coronavirus-vote-by-mail-20200616-bi5qwfdq7bgjhdb4rzu7ygebme-story.html (retrieved June 16, 2020).

[3] Available at https://www2.illinois.gov/Pages/news-item.aspx?ReleaseID=21690 (retrieved Aug. 6, 2020).

later than recommended by the Postal Service. *See* "Timeliness of Ballot Mail in the Milwaukee Processing & Distribution Center Service Area," Office of Inspector General, United States Postal Service, July 7, 2020.[4]

More alarming than the incompetence of Illinois government is its history of corruption. Sadly, SB 1863 is but the latest example of self-dealing over many decades. SB 1863 opens the door to corruption most widely by allowing for ballot harvesting — the practice by which paid, political operatives collect ballots from voters and return them to the election authority. This is the real reason for the enactment of SB 1863. No new voters may vote by mail, as Pritzker claimed when signing the law, but how they may do so is new. Under prior law, ballot harvesting was prohibited: "It shall be unlawful for any person not the voter or a person authorized by the voter to take the ballot and ballot envelope of a voter for deposit into the mail unless the ballot has been issued pursuant to application by a physically incapacitated elector . . . ." 10 ILCS 5/19-6. Under SB 1863, anyone may return another person's ballot: "Election authorities shall accept any vote by mail ballot returned, including ballots returned with insufficient or no postage . . . ." 10 ILCS 5/2B-20(e). If that language wasn't sufficiently clear to override the unrepealed language in the prior law, the next half of the sentence provides a clear way to work around the restriction. Voters do not have to mail the ballots back to turn them in: "Election authorities . . . may establish secure collection sites for the postage-free return of vote by mail ballots." *Id*. Defendants Hernandez, Kresse, and Swain have already expressed their intention to place these drop boxes "at every Early Voting site in Chicago" with no restrictions on who may use them. *See* https://chicagoelections.gov/en/vote-by-mail.html (retrieved Aug. 10, 2020). By contrast,

---

[4] Available at https://www.uspsoig.gov/sites/default/files/document-library-files/2020/20-235-R20.pdf (retrieved Aug. 5, 2020).

many states follow prior Illinois law and limit the return of ballots to voters or their close friends and relatives. *See* "Voting Outside the Polling Place," Table 10, National Conference of State Legislatures.[5] This new practice in Illinois of allowing paid, political operatives to collect ballots will lead to many of those votes being tampered with and others intentionally not returned because they were cast against Pritzker's favored candidate or cause.

In order to make ballot harvesting even easier, SB 1863 provides that the names and addresses of all voters who return the vote-by-mail application be provided to any political committee or candidate who requests them. 10 ILCS 5/2B-55(d). The law further provides a pool of available operatives to work on behalf of the Democratic party by making the date of the general election a state holiday, thereby giving all government workers the day off to campaign. 10 ILCS 5/2B-10.

Moreover, before SB 1863, fraudulent ballots could be disqualified by an election judge who recognized that the signature on the ballot did not match the signature on file with the election commission. 2019 10 ILCS 5/19-8(g-5). SB 1863, on the other hand, sets up a system by which partisan election judges can prevent fraudulent ballots from being tossed out, by providing that a single election judge on a three-judge panel can veto a ballot's disqualification. 10 ILCS 5/2B-20. SB 1863 doesn't even require that such an election judge be an adult of competent age, instead allowing 16-year-olds to serve in the role. 10 ILCS 5/2B-40(a)(1).

If, after all these advantages, Pritzker's candidates still need more votes to win their races, SB 1863 also extends the period to cure a provisional ballot from seven days to 14 days. 10 ILCS 5/2B-35(e).

---

[5] Available at https://www.ncsl.org/research/elections-and-campaigns/vopp-table-10-who-can-collect-and-return-an-absentee-ballot-other-than-the-voter.aspx (retrieved June 23, 2020).

**STANDARD OF REVIEW**

The U.S. Court of Appeals for the Seventh Circuit has established a two-stage test for the issuance of preliminary relief. First, the movant must show (1) irreparable harm in the period before resolution on the merits; (2) traditional legal remedies are inadequate; and (3) there is at least some likelihood of success on the merits. *HH-Indianapolis, LLC v. Consol. City of Indianapolis*, 889 F.3d 432, 437 (7th Cir. 2018). If a party meets these thresholds, the court moves to "weigh[] the factors against one another, assessing whether the balance of harms favors the moving party or whether the harm to other parties or the public is sufficiently weighty that the injunction should be denied." *Id.*

**ARGUMENT**

**I.      Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.**

Courts have repeatedly held that an "infringement on the fundamental right to vote constitutes irreparable injury." *Democratic Nat'l Comm. v. Bostelmann*, No. 20-cv-249-wmc, 2020 U.S. Dist. LEXIS 48394, at *22 (W.D. Wis. Mar. 20, 2020); *see also Obama v. Husted*, 697 F.3d 423, 435 (6th Cir. 2012); *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986).

This case is brought ahead of the November 2020 election, an election that will take place subject to deprivation of the fundamental right to vote if an injunction against SB 1863 is not issued. Under these circumstances "traditional legal remedies would be inadequate, since infringement on a citizen's constitutional right to vote cannot be redressed by money damages." *Bostelmann*, 2020 U.S. Dist. LEXIS 48394, at *22 (citing *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate."); *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("[O]nce the election occurs,

5

there can be no do-over and no redress.").

This Court should, therefore, find that the deprivation of the fundamental right to vote constitutes irreparable injury and that Plaintiff will have no adequate remedy at law.

**II.    Plaintiff has a better than negligible chance of success on the merits.**

In order to be granted a preliminary injunction, the Seventh Circuit requires only that Plaintiff "show that it has a better than negligible chance of success on the merits of at least one of its claims," *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.,* 549 F.3d 1079, 1096 (7th Cir. 2008) (internal quotation marks omitted). Compared to other circuits, "[t]his is an admittedly low requirement and is simply a threshold question." *Id.*

**A.    Plaintiff has a better than negligible chance of success on the merits of the claim that SB 1863 violates the fundamental right to vote in the First and 14th Amendments and "the integrity of the election process" in Ill. Const. Art. III, Sec. 4 by vote-dilution disenfranchisement. (Count I)**

The right to vote is fundamental and protected by both the First and 14th Amendments to the U.S. Constitution. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). As the Supreme Court has held, "[u]ndeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections . . . ." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964). Moreover, the Illinois Constitution provides an even higher protection because it explicitly states, "[t]he General Assembly by law shall . . . insure . . . the integrity of the election process . . . ." Ill. Const. Art. III, Sec. 4. SB 1863 violates these provisions and disenfranchises voters by diluting Plaintiff's votes with fraudulent ones.

When assessing challenges to state election laws before an election takes place, courts employ the *Anderson-Burdick* framework. *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). *Anderson-Burdick* is a "flexible standard," *Burdick*, 504 U.S. at 434, for a court to evaluate "[c]onstitutional challenges to specific provisions of a State's

6

election laws," *Anderson*, 460 U.S. at 789. A court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and 14th Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the state as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id*. If the burden is minimal, the scrutiny is also minimal. If the burden is severe, the state interest must be compelling. *Ohio Democratic Party v. Husted*, 834 F.3d 620, 627 (6th Cir. 2016).

Under the *Anderson-Burdick* framework, the character and magnitude of the asserted injury in this case is tremendous: the loss of the fundamental right to vote through vote dilution caused by voter fraud. The voter fraud that occurs through ballot harvesting is not speculative. This form of fraud has been demonstrated in a number of recent elections, including the most recent congressional election, in which the fraud would have stolen a seat in the U.S. House of Representatives, had it not been discovered. *See* "State Board unanimously orders new election in 9th Congressional District," North Carolina State Board of Elections.[6] There, a paid, political operative used ballot harvesting to tamper with voters' selections before submitting them. *See* Doug Bock Clark, "The Tearful Drama of North Carolina's Election-Fraud Hearings," the New Yorker (Feb. 24, 2019).[7]

Just next door, in East Chicago, Indiana, voter fraud in absentee ballots also resulted in the overturning of an election during the Democratic mayoral primary in 2003. *See* Ruthann

---

[6] Available at https://www.ncsbe.gov/Press-Releases?udt_2226_param_detail=229 (retrieved June 23, 2020).
[7] Available at https://www.newyorker.com/news/dispatch/the-tearful-drama-of-north-carolinas-election-fraud-hearings (retrieved June 23, 2020)

7

Robinson, "More Vote Fraud Charges," The Times of Northwest Indiana (July 30, 2005).[8]

Indeed, the bipartisan Report of the Commission on Federal Election Reform, chaired by former Democratic President Jimmy Carter and former Republican Secretary of State James Baker, concluded, "Absentee ballots remain the largest source of potential voter fraud. . . . Vote buying schemes are far more difficult to detect when citizens vote by mail." "Building Confidence in U.S. Elections" at 46.[9] "As the Carter-Baker Report observed, the 'electoral system cannot inspire public confidence if no safeguards exist to deter or detect fraud . . . .'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 197 (2008).

The scheme of mail-in ballots is especially suspect "in a state as notorious for election fraud as Illinois is." *Nader v. Keith*, 385 F.3d 729, 733 (7th Cir. 2004). As the Seventh Circuit Court of Appeals already recognized, "Oregon, for example, has switched to a system of all-mail voting. O.R.S. § 254.465. But what works in the state of Oregon doesn't necessarily work in Illinois, especially in light of the colorful history of vote fraud we've seen." *Id*. at 734. (internal quotations omitted).

The way to catch voter fraud through ballot harvesting is to enforce a rigorous system to match signatures on the voter rolls with signatures on the mail-in ballot. But requiring three judges to be unanimous in deciding not to count an absentee ballot means there will always be one election judge from the Democratic Party with veto power to ensure fraudulent votes are counted, even if the other two judges see clear irregularities. Moreover, the election judge may be a minor and has free reign to rubber stamp signature forgery since "there is a dearth of Illinois

---

[8] Available at https://www.nwitimes.com/news/local/more-vote-fraud-charges/article_e05687f5-aa45-5834-b7a9-c89c7620cfee.html (retrieved June 23, 2020).
[9] Available at https://web.archive.org/web/20070609115256/http://www.american.edu/ia/cfer/report/full_report.pdf (retrieved June 23, 2020).

law on the subject of how such signatures should be analyzed." *Bd. of Educ. v. Pollastrini*, 2013 IL App (2d) 120460, ¶ 16, 374 Ill. Dec. 408, 413, 995 N.E.2d 547, 552.

In addition, the scheme from SB 1863 for giving government employees the day off has been used before when the "U.S. Postal Service engaged in widespread violation of federal law by pressuring managers to approve letter carriers' taking time off [in 2016] to campaign for Hillary Clinton and other union-backed Democrats." Lisa Rein, "Postal Service Broke Law in Pushing Time Off for Workers to Campaign for Clinton, Investigation Finds," Washington Post, July 19, 2017.[10]

If all these mechanisms do not produce the desired electoral outcome, the final provision of SB 1863 will freeze the scoreboard clock for 14 days to allow plenty of time to come from behind to win the game. This would allow the army of workers with the day off and a list of people who did not vote by mail to impersonate voters and cast provisional ballots that can then be cured later. Allowing decision makers to make those decisions after knowing the election results alters the nature of the election. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, No. 19A1016, 2020 U.S. LEXIS 2195, at *2 (Apr. 6, 2020).

The SB 1863 scheme of "voting fraud impairs the right of legitimate voters to vote by diluting their votes — dilution being recognized to be an impairment of the right to vote." *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 952 (7th Cir. 2007). For this reason, Courts have consistently found that schemes to commit fraud or dilute votes constitute an abridgement of the fundamental right to vote. *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) ("The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just

---

[10] Available at https://www.washingtonpost.com/politics/postal-service-broke-law-in-pushing-time-off-for-workers-to-campaign-for-clinton-investigation-finds/2017/07/19/3292741c-6ca0-11e7-b9e2-2056e768a7e5_story.html (retrieved Aug. 5, 2020).

as effectively as by wholly prohibiting the free exercise of the franchise."); *see also Reynolds v. Sims*, 377 U.S. 533, 555 (1964); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964); *Baker v. Carr*, 369 U.S. 186, 208 (1962); *United States v. Saylor*, 322 U.S. 385, 388 (1944); *Ohio Republican Party v. Brunner*, 544 F.3d 711, 713 (6th Cir. 2008).

On the other side of the *Anderson-Burdick* framework, the interest of the state or of voters in mail-in ballots is minimal or nonexistent. Courts, including the U.S. Supreme Court and this Court, have repeatedly held that absentee balloting is a privilege, not a right. *McDonald v. Board of Election Comm'rs*, 394 U.S. 802, 809-10 (1969); *McDonald v. Bd. of Election Comm'rs*, 277 F. Supp. 14, 17 (N.D. Ill. 1967); *Parrigin v. Sawyer*, 457 S.W.2d 504, 505 (Ky. Ct. App. 1970); *Sheehan v. Franken (In re Contest of Gen. Election)*, 767 N.W.2d 453, 462 (Minn. 2009); *Franks v. Hubbard*, 498 S.W.3d 862, 872 (Mo. Ct. App. 2016); *McMaster v. Wilkinson*, 15 N.W.2d 348 (Neb. 1944); *In re Mallon*, 556 A.2d 1271, 1278 (N.J. Super. Ct. App. Div. 1989); *Fugate v. Buffalo*, 348 P.2d 76, 83 (Wyo. 1959). In fact, the Seventh Circuit has held that states can entirely eliminate absentee balloting if they wish. *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004).

In addition, prior to the passage of SB 1863, voters in Illinois already could vote absentee with no excuse needed, so Pritzker's purported state interest to "allow more people" to vote is factually untrue and, therefore, nonexistent.

Thus, this Court should find that, under the *Anderson-Burdick* framework, Plaintiff is likely to succeed on the merits of its claim that SB 1863 will lead to voting fraud and vote-dilution disenfranchisement.

> **B. Plaintiff has a better than negligible chance of success on the merits of the claim that SB 1863 violates the fundamental right to vote in the First and 14th Amendments and "the integrity of the election process" in Ill. Const. Art. III, Sec. 4 by direct disenfranchisement. (Count II)**

10

In addition to vote-dilution disenfranchisement, SB 1863 disenfranchises those same voters directly. First, the failure to prohibit ballot harvesting will lead to ballots for disfavored candidates being collected by paid, partisan political operatives and simply thrown into the trash, thus directly disenfranchising Republican voters. This practice occurred in the last congressional election in North Carolina. *See* Doug Bock Clark, "The Tearful Drama."

Second, the historic incompetence of the governments of Illinois, Cook County, and Chicago, combined with the ineptitude of the U.S. Postal Service will also lead to valid votes for Plaintiff's candidates not being counted. The failure of SB 1863 to require tracking devices on vote-by-mail ballots, the allowance for ballots to be requested two days later than the U.S. Postal Service recommendation, and the U.S.P.S. track record for losing and delaying mail will disenfranchise thousands of voters. For example, over 80,000 New York City Democratic presidential primary ballots were not counted in the recent June 23, 2020 election because they arrived late, lacked a postmark, failed to include a signature, or contained other defects. This number meant that a staggering 21% of the votes cast were not counted. *See* Carl Campanile et al., "Over 80,000 Mail-in Ballots Disqualified in NYC Primary Mess," New York Post, Aug. 5, 2020.[11] As a result, the U.S. District Court for the Southern District of New York just last week found that direct disenfranchisement had occurred and ordered election officials to count thousands of otherwise invalid mail-in ballots. *Gallagher v. N.Y. State Bd. of Elections*, 2020 U.S. Dist. LEXIS 138219 (S.D.N.Y. No. 20 Civ. 5504, Aug. 3, 2020). A similar debacle awaits Illinois if SB 1863 is allowed to be implemented.

Scholarly evidence agrees. One study found that the "number of lost votes through the

---

[11] Available at https://nypost.com/2020/08/05/84000-mail-in-ballots-disqualified-in-nyc-primary-election/ (retrieved Aug. 5, 2020).

11

vote-by-mail system in 2008 may have been as large as 7.6 million, or approximately one in five individuals who attempted to vote by mail." Charles Stewart III, *Losing Votes Mail*, 13 NYU J. of Leg. & Pub. Pol. 573, 576 (2010). Moreover, "vote-by-mail is highly decentralized. It relies on millions of people who are unschooled in election law and out of the sight of election administrators to perform a series of clerical tasks they otherwise rarely encounter. The chain-of-custody of ballots is less exacting. There are fewer opportunities to correct mistakes or clarify how to mark the ballot." *Id.* It is little wonder, then, that research also shows that vote-by-mail undermines voters' confidence that their votes will be counted. One study reported that the fraction of absentee mail voters reporting they were "very confident" their vote would be counted was 16% lower than those who voted in person. Michael Alvarez, Dustin Beckett, & Charles Stewart, III, *Voting Technology, Vote-by-Mail, and Residual Votes in California, 1990—2010*, 66 Political Research Quarterly 659 (September 2013).

Moreover, the combination of millions of mail-in ballots and an extended, 14-day period to determine whether provisional ballots are valid may risk depriving Illinois voters of their choice for president. *See, e.g., Bush v. Gore*, 531 U.S. 98, 111 (2000). For all these reasons, Plaintiff has shown it has a better than negligible chance of success on the merits as to Count II.

    **C.**    **Plaintiff has a better than negligible chance of success on the merits of the claim that SB 1863 violates the "secrecy of voting" in Ill. Const. Art. III, Sec. 4. (Count III)**

The Constitution of the State of Illinois requires that "[t]he General Assembly by law shall . . . insure secrecy of voting . . . ." Ill. Const. Art. III, Sec. 4. SB 1863 violates the right to a secret ballot for two reasons.

First, SB 1863 expressly provides that candidates and committees are to be provided a list of every voter who requests a mail-in ballot, so voters who elect to take advantage of this

provision of SB 1863 will have their identity exposed. Armed with the list of voters who requested a mail-in ballot, paid, political operatives will "chase" them by sending them follow-up mail urging them to vote. This "chase" mail is often sent in the form of an intentionally vague, official-looking solicitation from an elected official like the Illinois Secretary of State. The political operatives then receive the ballots at their fake official address and bundle them to submit, alter, or discard as they wish. SB 1863 compounds this current problem with Illinois elections by multiplying it into the millions of voters who will now be bombarded with these intentionally confusing solicitations. Moreover, it institutionalizes part of the process by directing the Secretary of State to send "chase" mail in his official role. 10 ILCS 5/2B-30(d). That will make it even more confusing if voters receive a second or third "chase" mail from the Secretary of State in his private capacity. Defendant Yarbrough has already foreshadowed this process when she sent the following message from her official county clerk Twitter account: "This election you may receive mail ballot applications from third parties, candidates and political parties, which they are allowed to send you." *See* Karen A. Yarbrough, Twitter (July 31, 2020).[12] This entire process denies Illinois voters the secrecy of voting by giving their information to political operatives and to the Secretary of State.

      Second, by definition, a mail-in ballot is discernible as coming from the voter who put it in the mail — it includes the information as to who sent it on the same envelope containing the ballot with the voter's preference marked. The massive increase in mail-in ballots will overwhelm local election authorities and undermine the systems for not identifying ballots. At best, it will subject voters to the sort of retaliation and public harassment that has come to

---

[12] Available at https://twitter.com/cookcountyclerk/status/1289302010853031938 (retrieved August 3, 2020)

characterize our politics, and at worst, it will allow payment to those who vote for candidates favored by bill supporters.

This risk of exposure is grave and undermines our democracy. Courts have repeatedly recognized that "fear of disclosure in and of itself chills their speech." *Doe v. Harris*, 772 F.3d 563, 581 (9th Cir. 2014). Privacy "has always been a fundamental tenet of the American value structure." *California v. Byers*, 402 U.S. 424, 450 (1971) (Harlan, J., concurring) (quoting Robert McKay, *Self-Incrimination and the New Privacy*, 1967 Sup. Ct. Rev. 193, 210). Privacy is an end in itself that courts should respect and protect. *United States v. Connolly*, 321 F.3d 174, 188 (1st Cir. 2003). "[O]ur nation values individual autonomy and privacy," *United States v. Valdes-Vega*, 738 F.3d 1074, 1076 (9th Cir. 2013), and the loss of that privacy is in itself a substantial burden. Therefore, this Court should find that Plaintiff has shown it has a better than negligible chance of success on the merits of Count III.

**III. Plaintiff and the public will suffer substantial harm without a preliminary order while there would be no harm to Defendants should the Court enter a preliminary order.**

Under Seventh Circuit law, the balance of harms is evaluated on a sliding scale: the more likely Plaintiff "will win its case on the merits, the less the balance of harms need weigh in its favor." *Girl Scouts*, 549 F.3d at 1100 (7th Cir. 2008). "When conducting this balancing, it is also appropriate to take into account any public interest, which includes the ramifications of granting or denying the preliminary injunction on nonparties to the litigation." *Id.*

The balance of harms in this case squarely favors the interest of Plaintiff and the public in a fair election. Illinois can claim no special harm that will result from conducting the election without the provisions of SB 1863 because Illinois has conducted every election over the past two centuries without ballot-harvesting. The existence of COVID-19 this year in no way

increases the need for ballot harvesting. And if SB 1863 is enjoined, Illinois voters retain the right to vote by mail for any reason. For Plaintiff, the harm is significant and irreparable, as the loss of voting rights always is. The public interest will also be furthered by enjoining SB 1863, as the injunction will prevent Illinois voters from being disenfranchised and protect the secrecy of their ballots. Therefore, the balance of harms favors Plaintiff and the public.

## CONCLUSION

Because millions of ballot applications were mailed just last week, Plaintiff requests that this Court enjoin the remaining provisions of SB 1863 immediately. The names and addresses of those who return ballot applications need immediate protection to avoid the imminent harm of their release. Further, Plaintiff requests that this Court enjoin the provisions of SB 1863 that allow ballot harvesting. Plaintiff requests that this Court enjoin Defendant Pritzker from declaring election day a paid holiday for government workers. Canceling this novel holiday not only will return government workers to their previous position, but it also will help reduce fraud in the election. Plaintiff requests that, prior to election day, this Court enjoin the new provisions of SB 1863 regarding the counting of fraudulent signatures and the appointment of election judges. Plaintiff requests that, prior to election day, this Court enjoin the new provisions of SB 1863 allowing 14 days to cure a defective provisional ballot. For the foregoing reasons, the Motion for Preliminary injunction should be granted.

Dated: August 10, 2020

Respectfully Submitted,

**COOK COUNTY REPUBLICAN PARTY**

s/ Brian K. Kelsey

Brian K. Kelsey
James J. McQuaid
Liberty Justice Center
190 South LaSalle Street, Suite 1500
Chicago, Illinois 60603
Telephone (312) 263-7668
Facsimile (312) 263-7702
bkelsey@libertyjusticecenter.org
jmcquaid@libertyjusticecenter.org
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I, James J. McQuaid, an attorney, hereby certify that I caused to be served a true and correct copy of the foregoing Memorandum of Law in Support of Motion for Preliminary Injunction by placing same with LaSalle Process Servers, 105 W. Madison Street, Suite 1306, Chicago, IL 60602, on August 10, 2020, for service to all Defendants at the addresses listed below on or prior to August 24, 2020.

/s/ James McQuaid

**Service List**

| | |
|---|---|
| J.B. Pritzker<br>Office of the Governor<br>100 W. Randolph St., Ste. 16-100<br>Chicago, IL 60601 | Karen A. Yarbrough<br>Cook County Clerk<br>69 W. Washington St., Ste. 500<br>Chicago, IL 60602 |
| Charles W. Scholz, Ian K. Linnabary, William J. Cadigan, Laura K. Donahue, William R. Haine, William M. McGuffage, Katherine S. O'Brien, and Casandra B. Watson<br>Illinois State Board of Elections<br>100 W. Randolph St., Ste. 14-100<br>Chicago, IL 60601 | Marisel A. Hernandez, William J. Kresse, and Jonathan T. Swain<br>Chicago Board of Election Commissioners<br>69 W. Washington, Ste. 600<br>Chicago, IL 60602 |